UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

Michael R. Allstead,

        Petitioner,

    v.

Jeanne S. Woodford, et al.,

        Respondent.

No. CIV-S-06-0005 RCT   P

**MEMORANDUM DECISION
AND ORDER**

This matter comes before the court on Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## INTRODUCTION

Petitioner Michael Allstead is a state prisoner currently incarcerated at the Folsom State Prison in Represa, California. He filed this petition for writ of habeas corpus to challenge his Sacramento County convictions for transporting methamphetamine, possessing methamphetamine for sale, and eluding a police officer. Respondent filed an answer and relevant portions of the record. Allstead raises four issues in his petition, which have all been properly exhausted before the

1

California state courts: prejudicial joinder, prejudicial admission of evidence, ineffective assistance of counsel, and a challenge to his upper-term sentence. A review of the record shows the California Court of Appeal, Third Judicial District, correctly applied United States Supreme Court law in rejecting all four claims. 28 U.S.C. § 2254(d). Accordingly, the petition is denied and the case is dismissed with prejudice.

PROCEDURAL AND FACTUAL HISTORY

Allstead filed this petition for writ of habeas corpus to challenge his Sacramento County Superior Court convictions and resulting sentence of twenty years' imprisonment.

The Third District Court of Appeal summarized the facts of the case as follows:

> On March 23, 2003, at about 10:30 p.m., Sacramento County Sheriff's deputies saw a Chevrolet Blazer at a parking lot in Sacramento. Allstead was in the driver's seat and his co-defendant, Michael Harrell, was in the passenger seat. The deputies knew defendant was a convicted felon and were informed he might be armed with a .45 caliber firearm.
>
> Deputies Beamer and Baugh approached the Blazer in separate marked patrol cars with their lights and sirens on. The Blazer drove away at about 40 miles per hour, traveled a few blocks, then stopped. Defendant and Harrell got out of the Blazer and fled on foot. The officers each took a police dog from his patrol car and Beamer yelled at Allstead and Harrell that the dogs would be sent after them if they did not stop. When neither man stopped, the dogs were released. They caught, bit, and subdued Allstead and Harrell.

Deputy Baugh approached Harrell, who was lying on his stomach. On the ground about two or three inches from Harrell's pants pocket were two baggies containing heroin and methamphetamine. The officers identified Harrell and took possession of the baggies.

Law enforcement officers found a foot powder container with a hidden compartment that held three bags of methamphetamine about three feet from the passenger side of the Blazer.

The Blazer was registered to Allstead. A duffel bag found inside the Blazer contained unused hypodermic needles; plastic baggies, including some with white powder residue; $42 in quarters; a digital scale; a paper with notations; and a letter addressed to Allstead.

No drugs were found on Allstead's person or in the Blazer. Upon searching Allstead, the officers found, among other things, $344 in cash, a cellular telephone, and two "pay-owe" sheets.

Defendant presented evidence that he was a coin collector who bought, sold, and traded coins. In his summation, defendant's counsel argued that defendant was a drug addict and a coin collector. The drug addiction explained the hypodermic needles found in the duffel bag. The coin collecting explained the 200 quarters found in the Blazer and the papers denoting amounts paid and owed.

Lodged Document 4 at 8.

Allstead was convicted by a jury of transporting methamphetamine (Cal. Health & Safety Code § 11379(a) (West 2007)), possessing methamphetamine for sale (Cal. Health & Safety Code § 11378 (West 2007)), and eluding a police officer (Cal. Veh. Code § 2800.1(a)(West 2007)). He was sentenced to twenty years in state prison.

Petitioner timely appealed to the California Court of Appeal, Third

3

Appellate District.   After briefing by the parties, the Third District Court of

Appeal affirmed Allstead's conviction and sentence.   Petitioner timely petitioned

the California Supreme Court for review.   On June 15, 2005, the Supreme Court

denied the petition for review without prejudice as to any relief to which Allstead

might be entitled after the court determined in *People v. Black*, S126182 and

*People v. Towne*, S125677, the effect of *Blakely v. Washington*, 542 U.S. 296

(2004), on California law.   Respondent warden concedes that Petitioner Allstead

has exhausted his four stated grounds for relief.

## CLAIMS

Allstead raises the following claims in his petition:

1. Denial of his motion to sever resulted in violation of his rights to due process
and a fair trial.
2. The trial court erred by permitting evidence of petitioner's prior arrests for
possession and sale of methamphetamine at trial.
3. He was denied effective assistance of counsel because his attorney opened the
door to prejudicial evidence.
4. His sentence violates his rights to due process and a jury trial under *Blakely v.
Washington*, 542 U.S. 296 (2004).

## LEGAL STANDARD

A habeas corpus petition shall not be granted with respect to any claim

adjudicated on the merits in the state courts unless the adjudication either  (1)

4

resulted in a decision that was contrary to, or involved an unreasonable application

of, clearly established federal law as determined by the Supreme Court; or (2)

resulted in a decision that was based on an unreasonable determination of the facts

in light of the evidence presented to the state courts. 28 U.S.C. § 2254(d). Under

the "contrary to" clause, a federal habeas court may grant the writ if the state court

arrives at a conclusion opposite to that reached by the Supreme Court on a question

of law or if the state court decides a case differently than the Supreme Court has on

a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-

413 (2000). Under the "unreasonable application" clause, a federal habeas court

may grant the writ if the state court identifies the correct governing legal principle

from the Supreme Court's decisions but unreasonably applies that principle to the

facts of the prisoner's case. *Id.*

A determination of a factual issue by a state court is presumed correct, and

the applicant has the burden of rebutting the presumption of correctness by clear

and convincing evidence. 28 U.S.C. §2254(e)(1).


## DISCUSSION

*1. Denial of Motion to Sever Trials*

Allstead first claims that the superior court's denial of his motions to sever

5

his trial from that of co-defendant Harrell violated his right to due process and a fair trial. Allstead twice moved to sever the trials on the grounds that Harrell's testimony would present an inconsistent defense, and that by taking the stand, Harrell exposed himself to impeachment by his prior record of criminal activity. In particular, Allstead was concerned that the jury would hear evidence of Harrell's membership in the Sacra Maniacs gang and the fact of the gang's involvement in narcotics trafficking. Allstead has "Sacra Maniacs" tattooed across his forehead. The trial court denied the motion but offered a limiting instruction.

A court may grant habeas relief based on a state court's decision to deny a motion for severance only if the joint trial was so prejudicial that it denied a petitioner his right to a fair trial. *Zafiro v. United States*, 506 U.S. 534, 538-39 (1993) (a court should grant severance "if there is a serious risk that a joint trial would compromise a specific trial right of one of the co-defendants, or prevent the jury from making a reliable judgment about guilt or innocence.").

We first consider Allstead's motion to sever on the ground that Harrell's testimony would have presented an inconsistent defense. Antagonistic defenses "are not prejudicial per se," even if defendants are hostile to or seek to blame one another. *Zafiro*, 506 U.S. at 538. In this case, the two defendants could hardly be called antagonistic. Contrary to Allstead's claims, Harrell did not actually provide

6

"direct evidence that [Allstead] possessed the drugs." In fact, he testified he never saw Allstead use or sell drugs. Lodged Document 4 at 6-7. The trial court properly denied Allstead's initial motion to sever because Harrell did not testify that the items found in and around the Blazer belonged to Allstead. Harrell's testimony merely restated the circumstantial evidence presented to the jury: there were drugs and paraphernalia in the car, and the car belonged to Allstead. By its verdict, the jury obviously chose not to credit the proferred defense testimony. That is not evidence of unfair prejudice.

The jury in this case would not have had to convict any defendant if it had acquitted another. As the trial court concluded, "Harrell's denials of ownership of and possession of the drugs were similarly circumstantial as to [Allstead]: they neither directly proved [Allstead's] ownership or possession nor precluded him from arguing that the drugs belonged to someone else." Lodged Document 4 at 6-7. Thus, the two defendants' theories were not antagonistic "to the point of being irreconcilable and mutually exclusive," *United States v. Sherlock*, 962 F.2d 1343, 1363 (9th Cir. 1992), such "'that the acceptance of the co-defendants theory by the jury precludes acquittal of the defendant,'" *United States v. Johnson*, 297 F.3d 845, 858 (9th Cir. 2002) (quoting *United States v. Hanley*, 190 F.3d 1017, 1028 (9th Cir. 1999). Therefore, the trial court's denial of Allstead's motion to sever on the

7

ground of inconsistent defenses was not contrary to or an unreasonable application

of federal law.

Allstead also moved to sever on the ground that evidence admitted against

Harrell would be prejudicial to Allstead because of their mutual gang affiliation.

CR at 675. The "prime consideration" in assessing prejudice in this situation is:

> whether the jury can reasonably be expected to compartmentalize the
> evidence as it relates to separate defendants, in view of its volume and the
> limited admissibility of some of the evidence. The prejudicial effect of
> evidence relating to the guilt of codefendants is generally held to be
> neutralized by careful instruction by the trial judge.

*United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir. 1980) (internal citations

omitted); *see also Johnson*, 297 F.3d at 855 ("Additionally, if the district court

attempted to cure any risk of prejudice with proper limiting instructions, a

defendant must also show that the curative instructions were inadequate.");

*Lambright v. Stewart*, 191 F.2d 1181, 1186 (9th Cir. 1999).

Here, the trial court offered a careful limiting instruction. When Allstead's

attorney renewed his motion for severance, the trial judge properly responded,

"The Court believes that the issue of the information regarding the Sacra Maniacs

and the affiliation with drugs can easily be handled by a limiting instruction that

that information and that evidence is specifically relating to Mr. Harrell and Mr.

Harrell alone." CR at 680.  Just before the jury retired to commence deliberations,

8

the trial judge reiterated the limiting instruction: "Evidence has been admitted against one of the defendants and not admitted against the other. At the time this evidence was admitted you were instructed that it should not be considered by you against the other defendant. Do not consider this evidence against the other defendant." CR at 859. Therefore, even if the introduction of evidence of Harrell's gang affiliation was detrimental to Allstead, the limiting instruction sufficiently curbed any possible prejudice. Where the evidence presented as a result of the joint trial was "sufficiently dealt with through limiting instructions," there is no manifest prejudice for purposes of federal law. *See Johnson*, 297 F.3d at 857.

In considering whether a joint trial was unduly prejudicial, the reviewing court may also consider the weight of evidence introduced against the co-defendants in light of the independent evidence of the petitioner's guilt or innocence. *See Johnson*, 297 F.3d at 856. Here, even if evidence that Harrell was a gang member might have been somewhat damaging to Allstead's defense, it was insignificant in light of the extensive independent evidence of Allstead's guilt. This independent evidence included: Allstead's flight from police officers; the discovery of pay-owe sheets, a cell phone, cash, syringes, a digital scale, and plastic baggies in Allstead's car; and a canister with a false bottom containing

9

methamphetamine near the car. Lodged Document 4 at 8. This evidence would have been admissible even in a separate trial, and would be sufficient to permit a jury to convict Allstead of all three charges. The state court of appeal reasonably concluded that Allstead would not have obtained a more favorable result even if there had been separate trials. Where the evidence presented as a result of a joint trial is "insignificant in the context of the overall case," *see Johnson*, 297 F.3d at 857, we cannot say Allstead suffered manifest prejudice.

In light of the absence of truly antagonistic defenses, the trial court's careful limiting instruction, and the substantial independent evidence of Allstead's guilt, he is not entitled to habeas relief. The state appellate court's determination that Allstead did not demonstrate that the joint trial resulted in a denial of his right to a fair trial was not contrary to, or an unreasonable application of, federal law.

## 2. Bad Acts Evidence

Allstead claims the trial court prejudicially erred by admitting evidence that Allstead had been convicted on two prior occasions for possession of methamphetamine. Petition at 5. He argues the admission of this evidence pursuant to California Evidence Code section 1101, subsection (b), violated his rights to due process and a fair trial. The trial court granted the prosecution's

10

motion to present evidence of Allstead's 1993 and 1996 convictions, ruling that the evidence was "highly relevant for intent, and that the intent would outweigh the potential prejudice." RT at 24. The Court of Appeal reasoned that, "because the evidence tended to show defendant had knowledge of the possession and sale of methamphetamine and that he intended to possess and sell the methamphetamine found in and around his car, the evidence was properly admitted under section 1101, subsection (b)." Lodged Document 4 at 9. It therefore affirmed the trial court's admission of the prior acts evidence as a matter of California evidence law.

The admissibility of evidence under state law is not subject to attack through federal habeas proceedings, so we do not consider whether the admission was appropriate under California law. However, even if the decision was in error, the fact that prior bad acts evidence may have been improperly admitted under state law is not, standing alone, a sufficient basis for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62 (1991) (rejecting the Ninth Circuit's reliance on the fact that evidence was incorrectly admitted pursuant to California law as a basis for federal habeas corpus relief). A federal court may grant habeas relief when the evidentiary error, if any, rendered the trial fundamentally unfair and resulted in a denial of due process. *Id.* at 68, 70.

Admission of other acts evidence that a defendant contends is unduly

11

prejudicial rises to the level of a due process violation only when "there are *no* permissible inferences the jury may draw from the evidence." *Boyde v. Brown*, 404 F.3d 1159, 1172 (9th Cir. 2005) (quoting *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991)). Introduction of evidence of prior bad acts for other purposes–for instance, to show intent, knowledge, motive, and modus operandi–is permissible. *See, e.g. Boyde*, 404 F.3d at 1173 (modus operandi); *Leavitt v. Arave*, 383 F.3d 809 (9th Cir. 2004) (knowledge); *Windham v. Merkle*, 163 F.3d 1092 (9th Cir. 1998) (motive); *Butcher v. Marquez*, 758 F.2d 373 (9th Cir. 1985) (intent).

Here, the jury could draw permissible inferences as to Allstead's state of mind from the evidence of Allstead's prior convictions, and the prosecution sought to introduce it as probative for that very reason. Prior to trial, the prosecutor explained, "It's the sales, possession for sale of methamphetamine, and the indicia of sales that he possesses in both the '93 and '96 case, that is, the baggies . . . paraphernalia in the form of syringes, scales in the one particular case, the amount of methamphetamine . . . . All of those go to show his intent and knowledge in this particular case, and they are similar." RT at 23.

The Court of Appeal noted that the trial court and prosecution both sought to ensure the jury would draw only permissible inferences. The trial court instructed the jury, consistent with CALJIC No. 2.50, that the evidence of Allstead's prior

12

conduct was admitted for the limited purpose of proving knowledge and intent and not to show defendant's propensity to commit criminal acts. Lodged Document 4 at 11; RT at 863. The prosecution–the party that introduced the supposedly prejudicial evidence–reinforced the limiting instruction by properly arguing in summation "that the evidence was admissible only for the limited purpose of showing defendant's knowledge of the methamphetamine and his intent to possess it for sale." Lodged Document 4 at 11.

In his brief before the California Court of Appeal, Allstead argued the evidence was admitted only to prove propensity. Even if we were to assume that the evidence was used only to prove propensity, it is not "clearly established Federal law" that the admission of propensity evidence violates due process. Indeed, the Supreme Court has left open that very question. *Estelle v. McGuire*, 502 U.S. 62, 75 n.5 (1991) ("we express no opinion on whether a state law would violate the Due Process Clause if it permitted use of 'prior crimes' evidence to show propensity to commit a charged crime"); *see Holgerson v. Knowles*, 309 F.3d 1200, 1202 (9th Cir. 2002) (habeas relief not warranted unless due process violation clearly established by the Supreme Court). Therefore, even if there were no other permissible inference the jury could draw from the evidence of Allstead's prior crimes, admitting the evidence would not be contrary to, or an unreasonable

13

application of, clearly established Supreme Court law. *See Carey v. Musladin*, 549

U.S. 70, 76 (2006) ("Given the lack of holdings from this Court regarding the

potentially prejudicial effect of spectators' courtroom conduct of the kind involved

here, it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly

established Federal law.'") (citing 28 U.S.C. § 2254(d)(1) (alterations in original)).

## 3. *Ineffective Assistance of Counsel*

Allstead claims he suffered ineffective assistance of counsel because his

attorney opened the door to prejudicial evidence. Petition at 6. Prior to trial, the

court granted Allstead's motion in limine to exclude reference to petitioner's prior

criminal record; his parole status; his prior alleged misbehavior, including sale or

use of unlawful drugs; the fact that he and Harrell were the subject of a criminal

investigation at the time of their arrest; the fact that police allegedly possessed a

photograph of Allstead at the time of his arrest; the fact that police had a

description of his car at the time of his arrest; the fact that police allegedly received

information about him from an unnamed informant; and the fact the police knew

where defendant lived or expected to find him near his residence. Lodged

Document 4 at 13.

During pre-trial motions, Allstead's attorney indicated "there certainly is an

14

issue in this case as to whether excessive force was used," which might indicate "the police have some motivation to exaggerate the culpability of the defendants." RT at 171. He said he "intend[ed] to raise that as an issue giving rise to bias on the part of the police in terms of their truthfulness about what they observed and what happened." RT at 172. The judge questioned counsel: "[B]y saying this force is excessive, do you not open up the defendant's prior criminal record, the defendant's prior contact with law enforcement, the defendant's misbehavior, et cetera, et cetera, all of the things that I've now excluded?" RT at 173. Counsel responded, "I do agree some of that may come in" (RT at 174), and later raised the question of excessive force during trial. In response, the court allowed the prosecution to introduce evidence that the officers believed Allstead was armed and that he was an ex-felon.

In order to establish ineffective assistance of counsel, a petitioner must show that counsel's representation fell below an objective standard of reasonableness and that the deficient performance affected the result of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689. In order to demonstrate prejudice, the defendant must show there is a reasonable probability that but for counsel's unprofessional errors, the result would

15

have been different. *Id.* at 694.

The California Court of Appeal focused on the prejudice prong of the test, correctly noting that it is unnecessary to consider whether counsel's performance was deficient before considering whether any deficiency was prejudicial, so we do not consider actual deficiency here. *See Strickland*, 466 U.S. at 697. The court reasoned that the challenged evidence was not prejudicial for two reasons: first, the 1993 and 1996 convictions were properly admitted to show knowledge and intent; and second, that Allstead could not have been prejudiced by evidence the police mistakenly believed he might have been carrying a weapon because the evidence at trial clearly established Allstead was not armed during the incident. Lodged Document 4 at 15.

The state court's decision was a reasonable application of the *Strickland* standard. Because, as discussed above, evidence of Allstead's prior convictions was properly admitted to show knowledge and intent, and he suffered no prejudice therefrom. Even if his attorney erroneously opened the door to this evidence by presenting the excessive force argument, Allstead could not be prejudiced by the admission of already-admitted evidence. Nor was he prejudiced by evidence that police *mistakenly* thought he was armed. Allstead complains his attorney opened the door for the prosecutor to discuss whether he was carrying a weapon.

16

However, the prosecutor's questions elicited testimony that Allstead was *not*, in fact, armed. RT at 281. It is "not reasonably probable that, but for counsel's errors, the result of the proceeding would have been different." *See Bonin v. Calderon*, 59 F.3d 815, 833 (9th Cir. 1995).

The state court decision rejecting petitioner's claim of ineffective assistance of counsel was not contrary to or an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence in the record before this court.

## 4. Challenge to Sentence

Finally, Allstead claims the trial court erred by imposing an upper term sentence based on facts that were not found by the jury nor proven beyond a reasonable doubt in violation of his Sixth Amendment rights under *Blakely v. Washington*, 542 U.S. 296 (2004). Petition at 6. At sentencing, the prosecutor argued several factors in aggravation. RT at 960-61. The trial court imposed the upper term of four years on one count based on the aggravating factors, finding no mitigating factors. The court stated it "considered the circumstances in aggravation particularly including the quantity of controlled substance and the defendant's prior performance on parole," citing California Penal Code § 1170.73

17

and California Rules of Court 4.421(b)(4) and (b)(5). The court did not rely on Allstead's four prior prison terms because it imposed Penal Code § 667.5, subdivision (b) enhancements for each prior prison term. Lodged Document 4 at 17.

After Allstead filed his habeas petition, the Supreme Court decided *Cunningham v. California*, 549 U.S. 270, 127 S. Ct. 856 (2007). Respondents addressed *Cunningham* in their response to the petition, and we assume *Cunningham* superceded Allstead's *Blakely* argument.

In *Cunningham*, the Court struck down aspects of the California sentencing scheme under which Allstead was convicted, which provided for lower, middle, or upper terms of punishment, depending on the presence of aggravating factors. 127 S. Ct. at 868. The Court held that upper-term sentences violate the Sixth Amendment if they are imposed on the basis of aggravating facts not found by a jury beyond a reasonable doubt, despite the fact that the upper term is authorized by statute. *Id.* at 870-71. The Ninth Circuit later held in *Butler v. Curry*, 538 F.3d 624 (9th Cir. 2008), that *Cunningham* was clearly dictated by the Supreme Court's prior precedent in *Blakely* and is therefore retroactive to the date of the *Blakely* decision in 2004. Allstead's sentence was finalized on June 15, 2005, when the California Supreme Court issued its order denying review. Lodged Document 6.

18

Because this date falls after *Blakely* was decided, *Cunningham* applies retroactively on collateral review and provides the governing law for this petition.

Despite *Cunningham*'s applicability to this case, Allstead suffered no violation of his Sixth Amendment right to a jury trial as a result of his upper-term sentence. Although the *Apprendi* line of cases requires all facts necessary for the sentence to be found by a jury, the Court has consistently maintained one exception: the fact of a prior conviction need *not* be found by a jury. *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000); *see also Almendarez-Torres v. United States*, 523 U.S. 224, 247 (1998). Following *Cunningham*, the California Supreme Court held in *People v. Black*, 161 P.3d 1130 (Cal. 2007) ("*Black II*"), that "under the DSL[,] the presence of one aggravating circumstance renders it lawful for the trial court to impose an upper term sentence." *Id.* at 1140. *Black II* observed that, under Supreme Court precedent, "as long as a single aggravating circumstance . . . has been established in accordance with the requirements of *Apprendi* and its progeny, any additional fact finding engaged in by the trial court in selecting the appropriate sentence . . . does not violate the defendant's right to jury trial." *Id.* at 1138.

Here, the trial court considered various factors in aggravation. However, as the Court of Appeal noted, not all of the factors were legally essentially to an

19

upper-term sentence. "[T]he legally essential facts are (1) defendant's status on parole following his 1996 prior conviction, and (2) his unsatisfactory performance on that parole, consisting of his commission of the present offenses." Lodged Document 4 at 17. The Court of Appeal concluded that, "based solely on defendant's prior conviction and parole," the trial court could properly impose the upper term, and therefore Allstead suffered no *Blakely* violation. Lodged Document 4 at 17.

The state courts' focus on Allstead's "*status* on parole" raises the question of whether parole status falls within the prior conviction exception. Although the United States Supreme Court has never defined the scope of the prior conviction exception, the Ninth Circuit recently held that a defendant's status on probation does not fall within the exception. *Butler*, 528 F.3d at 647. The *Butler* court reasoned that the justification for the prior conviction exception is that proof exists in prior judicial records or documents, which were created with full Sixth Amendment safeguards. *Id.* at 645. Unlike the fact of a conviction, or the fact that a defendant was initially *sentenced* to probation, a defendant's *status* on probation cannot be ascertained from prior conviction records. *Id.* at 646. The Ninth Circuit therefore concluded "the fact of being on probation at the time of a crime does not come within the 'prior conviction' exception and must be pleaded in an indictment

20

and proved to a jury beyond a reasonable doubt. *Id.*

We need not consider here whether this rationale would also exclude Allstead's status on parole from the prior conviction exception. As the *Butler* court carefully noted, the "conclusion that probation status at the time of the instant crime does not come within the 'prior conviction' exception does not suggest that petitioners will always, or even often, obtain relief when a judge, rather than a jury, has made such a finding." *Id.* at 647 n.4. Allstead is entitled to relief only if the sentencing error was not harmless. *See Washington v. Recuenco*, 548 U.S. 212 (2006); *Brecht v. Abramson*, 507 U.S. 619 (1993). *Apprendi* errors are harmless when the reviewing court can ascertain that the trial judge possessed sufficient documents at sentencing to conclude that a jury would have found the relevant fact beyond a reasonable doubt. *Butler*, 528 F.3d at 647 n.14 (citing *United States v. Salazar-Lopez*, 506 F.3d 748, 755 (9th Cir. 2007)).

That standard is plainly met here. At sentencing, the prosecution presented several documents, some of which were admitted into evidence during the trial. The documents discussed at sentencing included Allstead's "rap sheet," indicating his prior convictions, and his probation reports. The prosecution argued for the upper-term sentence because of Allstead's prior unsatisfactory performance on parole, and the fact that he was on parole when he committed the present offense.

21

RT at 963. The prosecution specifically directed the court's attention to "page fourteen of the probation report." RT at 965. Based on the sentencing colloquy, it appears the trial judge had sufficient unchallenged documentation before him to determine Allstead's parole status and could therefore properly impose the upper-term sentence. Even if Allstead suffered some *Apprendi* error, that error was harmless. Accordingly, the California superior court's imposition of an upper-term sentence was not contrary to, or an unreasonable application of, federal law at the time of Allstead's conviction.

Therefore, it is hereby

**ORDERED** that Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**. The case is dismissed with prejudice.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 12th day of December, 2008, at Seattle, Washington.

RICHARD C. TALLMAN
United States Circuit Judge
Sitting by designation

22